IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


SHERRI TAYLOR                                                                    PLAINTIFF

v.                    Civil No. 2:11-cv-02131-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                              DEFENDANT

**MEMORANDUM OPINION**

## I.    Factual and Procedural Background

Plaintiff, Sherri Taylor, brings this action seeking judicial review, pursuant to 42 U.S.C. §

405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her applications for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed her applications on January 8, 2009, alleging a disability onset date

of January 1, 2008, due to systemic lupus erythematosus ("SLE"),[1] gastroesophageal reflux disease

("GERD"), depression, back pain, arthritis, and carpal tunnel syndrome.  Tr. 32-33, 151, 197.  On

the alleged onset date, Plaintiff was forty-five years old with a high school education and some

college, as well as prior military service in the National Guard.  Tr. 22, 30-31, 156, 309-312.  She

has past relevant work as a certified nursing assistant, home health aide, and restaurant cook.  Tr. 22,

45-46, 158-165.

---

[1] Systemic lupus erythematosus is a chronic, multisystem, inflammatory autoimmune disorder occurring predominantly in young women.  Common manifestations may include arthralgias and arthritis, malar and other skin rashes, pleuritis and pericarditis, renal or CNS involvement, and hematologic cytopenias.  Treatment involves NSAIDs and often antimalarials for mild disease and corticosteroids and immunosuppressants for severe disease. THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 305-09 (Robert S. Porter, M.D., et al., eds., 19th ed. 2011).

Plaintiff's applications were denied at the initial and reconsideration levels.  Tr. 55-64.  At Plaintiff's request, an administrative hearing was held on January 13, 2010.  Tr. 27-48.  Plaintiff was present at this hearing and represented by counsel.  The ALJ rendered an unfavorable decision on May 5, 2010, finding Plaintiff was not disabled within the meaning of the Act.  Tr. 8-23. Subsequently, the Appeals Council denied Plaintiff's Request for Review on May 25, 2011, thus making the ALJ's decision the final decision of the Commissioner.  Tr. 1-5.  Plaintiff now seeks judicial review of that decision.

## II.   <u>Medical History</u>

Plaintiff has a history of lupus, back and joint pain, gastroesophageal reflux disease, and depression.  Tr. 279-312.  In 2000, Plaintiff was diagnosed with lupus by P. Ross Bandy, M.D., a rheumatologist.  Tr. 288-306.  X-ray imaging of Plaintiff's hands revealed minimal arthritic changes. Tr. 279.  An MRI of Plaintiff's brain revealed multiple small deep white matter lesions, potentially indicative of vasculitis.  Tr. 307.  Plaintiff was successfully treated with non-steroidal anti-inflammatory medications for lupus and Zoloft for depression.  Tr. 288-306, 309.  On April 13, 2001, Dr. Bandy advised that Plaintiff consider taking Plaquenil, an antimalarial medication sometimes used to treat lupus.[2]  Tr. 297-299.  However, there is no indication that Plaintiff took this medication.

In 2001, Plaintiff was disqualified from the National Guard due to a determination that her medical impairments rendered her unable to be deployed worldwide.  Tr. 309-312.  It was noted that Plaintiff's depression was stable on Zoloft at 100mg a day.  Tr. 310.  Plaintiff did not seek further medical treatment until 2006.

---

[2] *Id.* at 308.

A.  Ninth Street Ministries

In April 2006, Plaintiff established care at Ninth Street Ministries.  Tr. 199-202.  Initially, she complained of depression, arthritis in her neck, right shoulder and arm pain, and lupus.  Tr. 201. Plaintiff was diagnosed with degenerative joint disease, lupus (inactive), and depression, and treated with Effexor and Celebrex.  Tr. 201-202.  In July 2006, Plaintiff complained that Celebrex had not helped her neck pain and caused nausea and heartburn.  Tr. 201.  As a result, she was prescribed Prevacid to help with her GERD symptoms.  Tr. 200-202.  On December 27, 2007, Plaintiff complained that she continued to have GERD symptoms.  Tr. 200.  As a result, Celebrex was discontinued.  Tr. 200.  On February 28, 2008, Plaintiff was treated for an upper respiratory infection.  Tr. 200.  She discussed Lyrica for treatment of her lupus, but there is no indication this medication was ever prescribed or taken.  Tr. 200.  On November 20, 2008, Plaintiff reported back pain, chest congestion, and stinging pain in her right foot.  Tr. 199.  She was diagnosed with a urinary tract infection.  Tr. 199.

B.  Mena Regional Health System

On February 5, 2007, Plaintiff was taken by ambulance to Mena Regional Health System after vomiting blood and losing consciousness.  Tr. 203-217.  Laboratory testing was consistent with an upper gastrointestinal bleed.  Tr. 205.  Plaintiff was placed in the intensive care unit, where she received two units of packed red blood cells, which brought her hemoglobin and hematocrit up to 9.8 and 30, respectively.  Tr. 205, 217.  An esophagogastroduodenoscopy ("EGD") revealed an ulcer in the distal esophagus, an axial hiatal hernia at least five to six centimeters, and possible narrowing of the distal esophagus.  Tr. 205-206, 216-217.  No other active bleeding was appreciated.  Tr. 205, 216-217.  Plaintiff received a third unit of packed red blood cells and was discharged on February

6, 2007, with a discharge summary stating she could return to work on February 12, 2007.  Tr. 204-206.  Thomas Tinnesz, M.D., recommended that Plaintiff take Prilosec and iron tablets and follow up in two weeks.  Tr. 205-206.  He also cautioned Plaintiff to avoid Aspirin and non-steroidal anti-inflammatory medications.  Tr. 206.  Follow-up testing from February 20, 2007, revealed slightly low, but improved hemoglobin and hematocrit levels.  Tr. 221.  Plaintiff was diagnosed with anemia. Tr. 220.

On May 21, 2007, Plaintiff was treated for right shoulder pain.  Tr. 222-224.  X-ray imaging of Plaintiff's right shoulder revealed post-surgical changes with screw anchors in the humeral head, moderate acromioclavicular degenerative joint disease, and cortical irregularity of the under surface of the distal clavicle which could be a source of supraspinatus impingement.  Tr. 225.

On October 23, 2008, Plaintiff was treated for congestion, fever, coughing, and chest pain. Tr. 229-234.  On examination, Plaintiff's lungs were clear to auscultation and her pulse oximetry level was 97% on room air.  Tr. 232-233.  Plaintiff was diagnosed with bronchitis and treated with antibiotics.  Tr. 270-274.

On January 8, 2009, Plaintiff was treated for low back pain after a possible lifting injury.  Tr. 235-245.  On examination, Plaintiff had decreased range of motion and muscle spasms in her lower back.  Tr. 243.  She had a positive straight leg raise on the left.  Tr. 243.  Plaintiff was administered a steroid injection.  Tr. 240-241.  She was given a prescription for Norco and instructed to continue taking Flexeril.  Tr. 243.

C.  Walk-In Care Clinic

On February 15, 2009, Plaintiff was treated with antibiotics at the Walk-in Care Clinic in Mena for sinus congestion and ear pain.  Tr. 266-269.  On April 1, 2009, Plaintiff was treated for

-4-

allergic rhinitis.  Tr. 262-264.  She was given samples of Claritin and Singulair.  Tr. 264-265.

    D.  <u>Mountain View Clinic</u>

On March 3, 2009, Plaintiff presented to Mountain View Clinic with worsening lower back pain since December 2008, when she injured her back while lifting a box.  Tr. 258.  On examination, Plaintiff had tenderness over the left side of L4-S1.  Tr. 258.  X-ray imaging of Plaintiff's lumbar spine revealed vertebral bodies of normal height and alignment and no fractures or subluxations. Tr. 259.  Richard Lochala, M.D., diagnosed Plaintiff with low back strain, prescribed Flexeril and Tramadol, and recommended physical therapy.  Tr. 258.  On March 12, 2009, Plaintiff noted that her back pain had improved, but she was congested and had a cough.  Tr. 257.  Plaintiff was instructed to increase her strength and flexibility.  Tr. 257.  On March 16, 2009, Plaintiff was treated for bronchitis and rhinitis, but reported improved back pain.  Tr. 256.

    E.  <u>Agency Consultants</u>

In a Physical Residual Functional Capacity ("RFC") Assessment dated February 13, 2009, Jim Takach, M.D., an agency consultant, determined Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, sit and/or walk for a total of about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and push/pull within those limitations. Tr. 248-255.  Dr. Takach found Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, and would be limited to occasional overhead reaching on the right, but could perform unlimited handling, fingering, and feeling.  Tr. 250-251.  He found no visual, communicative, or environmental limitations.  Tr. 251-252.  Dr. Takach determined Plaintiff would be capable of performing light work.  Tr. 249.

## III.  <u>Applicable Law</u>

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003).  "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)).  In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a  medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner

-6-

to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since January 1, 2008, the alleged onset date. Tr. 13. At step two, the ALJ found Plaintiff suffers from a history of lupus, degenerative joint disease in her back and shoulder, duedenal ulcers, and GERD, which were considered severe impairments under the Act. Tr. 13-15. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 15.

At step four, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), in which she could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand and/or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and occasionally climb, balance, stoop, kneel, crouch, and crawl. Tr. 15-22.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work. Tr. 22. However, after receiving vocational expert testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[3] Accordingly, the ALJ determined

---

[3] The ALJ determined Plaintiff could perform the requirements of representative occupations such as sales attendant in clothing or retail stores, of which there are 37,000 jobs in Arkansas and 4,300,000 jobs nationally, and desk clerk, of which there are 2,300 jobs in Arkansas and 200,000 jobs nationally. Tr. 22-23, 46-48.

Plaintiff was not under a disability from January 1, 2008, the alleged onset date, through May 5, 2010, the date of the administrative decision.  Tr. 23.

**V.**      **Discussion**

On appeal, Plaintiff contends the ALJ erred by: (A) improperly determining her RFC; (B) failing to fully develop the record; and (C) dismissing her subjective complaints.  *See* Pl.'s Br. 11-15. For the following reasons, the court finds that substantial evidence supports the ALJ's decision.

A.  RFC Determination

Plaintiff contends that the ALJ erred in determining her RFC.  *See* Pl.'s Br. 11-13.  At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Substantial evidence supports the ALJ's RFC determination.  Plaintiff sought very little treatment during the relevant time period.  Treatment records from Ninth Street Ministries note that Plaintiff's lupus was inactive.  Tr. 201-202; *see Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (an impairment that can be controlled by treatment or medication is not considered disabling).

Plaintiff's medications consisted of proton pump inhibitors, a muscle relaxer, an antidepressant, a non-narcotic pain reliever for headaches, and over-the-counter arthritis medication. Tr. 33-34. Most notably, she did not require treatment with corticosteroids or immunosupressants, which is indicated for more severe cases of lupus.[4]  Although Plaintiff undoubtedly suffers from the effects of lupus, including joint pain, fatigue, shortness of breath, and arthritis, the medical evidence of record does not demonstrate that Plaintiff's lupus was disabling during the relevant time period.

Similarly, the record does not support Plaintiff's allegations of disabling shoulder pain, low back pain, and depression.  On May 21, 2007, Plaintiff reported right shoulder pain.  Tr. 224-225. X-ray imaging of Plaintiff's right shoulder revealed post-surgical changes with screw anchors in the humeral head, moderate acromioclavicular degenerative joint disease, and cortical irregularity of the under surface of the distal clavicle which could be a source of supraspinatus impingement.  Tr. 224-225.  However, at the administrative hearing, Plaintiff testified that she was not limited in the use of her shoulders or arms, nor did she seek additional treatment for shoulder pain during the relevant time period.  Tr. 39.

In January and March 2009, Plaintiff was treated for low back pain following a lifting injury. Tr. 235-245, 256-259.  X-ray imaging of Plaintiff's lumbar spine revealed vertebral bodies of normal height and alignment and no fractures or subluxations.  Tr. 259.  Treatment included a steroid injection, muscle relaxers and pain medication, and a physical therapy recommendation.  Tr. 240-241, 257-258.  On March 12, 2009, Plaintiff reported improvement in her back pain.  *Id.*; *see also Slaughter v. Apfel,* 205 F.3d 1347 (8th Cir. 2000) (physician recommended conservative course of treatment by prescribing only pain medication).  Plaintiff's conservative treatment and reported

---

[4] THE MERCK MANUAL OF DIAGNOSIS AND THERAPY, *supra* note 1, at 308.

improvement do not support her allegations of disabling back pain.

Finally, Plaintiff's allegations of disabling mental limitations are not borne out by the record. Plaintiff's depression was successfully managed with antidepressant medication.  Tr. 288-306, 309; *see Schultz*, 479 F.3d at 983 (an impairment that can be controlled by treatment or medication is not considered disabling).  Moreover, Plaintiff has never sought formal mental health treatment, nor did she complain of depression or anxiety during the relevant time period.  *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (claimant had not sought formal treatment by a psychiatrist, psychologist, or other mental health care professional).  Although Plaintiff testified that she has difficulty concentrating, mood changes, and trouble being around people, she is able to spend time with her family, get along with others, shop in stores, pay bills, count change, put together puzzles, and read books.  Tr. 39-40, 126-128, 183-184.  As such, the evidence of record does not support Plaintiff's reported mental limitations.  Accordingly, the undersigned concludes that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence).

### B.  Evaluation of the Record

Plaintiff contends that the ALJ did not properly evaluate Dr. Bandy's reports from Levi Hospital.  *See* Pl.'s Br. 13-14.  This argument has no merit.

Dr. Bandy treated Plaintiff from May 23, 2000, through April 13, 2001, eight years prior to her alleged onset date.  *See Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998) (evidence concerning ailments outside the relevant time period can support or elucidate the severity of a condition, but such evidence cannot serve as the only support for disability).  Dr. Bandy diagnosed Plaintiff with

polyarthritis, seropositive, positive ANA, speckled, hypergammaglobulinemia, history of motor vehicle accident with whiplash, low back discomfort, intermittent numbness and tingling of hands/possible compression neuropathy, and history of depression, treated. Tr. 293, 297. X-ray imaging of Plaintiff's hands revealed minimal arthritic changes. Tr. 279. An MRI of Plaintiff's brain revealed multiple small deep white matter lesions, possibly vasculitis. Tr. 307. Dr. Bandy treated Plaintiff with anti-inflammatory medication. Tr. 293, 297. On April 13, 2001, Dr. Bandy advised that Plaintiff consider taking Plaquenil, an antimalarial medication, for her lupus symptoms. Tr. 297. However, there is no indication that Plaintiff took this medication or followed up with Dr. Bandy after 2001.

Notably, there is a five-year gap in Plaintiff's treatment history. More recent medical records, dated June 29, 2006, reveal that Plaintiff's lupus was considered inactive. Tr. 201-202. Moreover, recent records do not document continued complaints of wrist, elbow, knee, or ankle pain. Tr. 294. The remote nature of Dr. Bandy's records render them less persuasive, especially given Plaintiff's overall lack of treatment following her lupus diagnosis. As such, the ALJ did not err in his evaluation of Dr. Bandy's treatment records.

    C.  <u>Credibility Determination</u>

Finally, Plaintiff alleges the ALJ improperly dismissed her subjective complaints. *See* Pl.'s Br. 14-15. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the

objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Contrary to Plaintiff's assertion, the ALJ properly considered her subjective complaints and dismissed them for legally sufficient reasons. With regard to activities of daily living, the ALJ noted that Plaintiff is able to prepare meals, perform some household chores, shop in stores, take care of her daughter, read, pay bills, spend time with her family, and perform a wide range of activities independently and effectively. Tr. 20, 39-40, 124-130, 180-186; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living). Additionally, the ALJ found that Plaintiff's overall lack of treatment was not consistent with her allegedly disabling symptoms. Tr. 20; *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) ("a claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications"). Notably, many of Plaintiff's office visits were unrelated to depression or lupus treatment. The ALJ also noted that Plaintiff received essentially routine and conservative care. Tr.

20; *see Smith v. Shalala*, 987 F.2d 1371, 1374-75 (8th Cir. 1993) (claimant's physicians prescribed only muscle relaxers and mild pain relievers and did not place any restrictions on claimant's activities). Finally, the ALJ found that Plaintiff's subjective complaints were simply inconsistent with the objective evidence in the record. Tr. 15-21; *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints).

Plaintiff alleges she could not afford prescription medication or regular medical care. Tr. 42-43. However, Plaintiff has not sought treatment at any low-cost clinics or charitable organizations in the area, nor has she provided evidence that she was denied medical care due to her financial condition. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). If Plaintiff's pain were truly disabling, it follows that she would have been more diligent in seeking low-cost treatment. *Id.*

Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's credibility analysis.

## VI.   Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 16th day of July 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

-13-